# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ARKEMA INC. and | : | |
| ARKEMA FRANCE, | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | NO. 10-2886 |
| | : | |
| v. | : | |
| | : | |
| HONEYWELL INTERNATIONAL, INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |

**Memorandum**

YOHN, J.                                                                                          February 2, 2012

Plaintiffs, Arkema Inc. and Arkema France (collectively, "Arkema"), brought this declaratory-judgment action against defendant, Honeywell International, Inc. ("Honeywell"), seeking to have the claims of Honeywell's U.S. Patent Nos. 7,279,451 (the "'451 patent") and 7,534,366 (the "'366 patent") (collectively, the "patents-in-suit") declared invalid or not infringed. These are both composition patents. Arkema has filed a motion for leave to supplement the complaint in which Arkema seeks to add U.S. Patent Nos. 8,033,120 (the "'120 patent") and 8,065,882 (the "'882 patent") (collectively, the "method patents") recently obtained by Honeywell. Honeywell opposes the motion on the ground that the method patents do not present a justiciable case and controversy and thus Arkema's proposed supplementation is futile. For the reasons set forth below, I will deny Arkema's motion to supplement its complaint.

I.      **Factual Background and Procedural History**

This action arises out of a dispute between Arkema and Honeywell concerning Arkema's past and planned sales of the chemical compound HFO-1234yf ("R-1234yf") to automobile manufacturers in the United States. R-1234yf is a refrigerant intended for use in automobile air-conditioning systems. As a result of changing environmental regulations, R-1234yf is considered the "next-generation" refrigerant among American and European manufacturers who are currently seeking to enter into multiyear supply contracts. In November 2009, Honeywell filed suit in Germany against Arkema's parent company, Arkema S.A., and Arkema's German sister company, Arkema GmbH, alleging liability for indirect infringement of Honeywell's European patent for the sale of R-1234yf to automobile manufacturers. The lawsuit was dismissed without prejudice by the German court.[1]

Arkema alleges that it is poised to enter the market as a supplier of R-1234yf and has received numerous requests for quotations from automobile manufacturers in the U.S. but has been prevented from supplying R-1234yf to these potential customers because of the cloud of uncertainty concerning the validity of Honeywell's patents.  In 2009, Arkema supplied samples of R-1234yf to General Motors for use in a vehicle-testing program. (Pl. Arkema's Mem. in Supp. of Mot. for Leave to Supplement the Compl. ("Pls.' Mem.") Ex. 3, 3.) Arkema has not sold R-1234yf to any customer in the United States since August 2010. (Def. Honeywell Int'l Inc.'s Opp'n to Pls.' Mot. for Leave to File a Supplemental Compl. ("Response") Ex. 2, 7.) Arkema has no contracts for the sale of R-1234yf in the United States and has no pending

---

[1] At oral argument, counsel represented that the German lawsuit was not dismissed on the merits but was akin to a dismissal for lack of jurisdiction in Germany.

requests for quotations or offers to sell. (Response Ex. 2, 8; Response Ex. 3, 3.) Nevertheless, Arkema asserts that it has made substantial preparations in order to supply U.S. customers with R-1234yf, including building a manufacturing facility, but that it has suspended its efforts to sell R-1234yf to U.S. automobile manufacturers because of lingering doubt concerning the validity of Honeywell's patents. (Pls.' Mem. 12.)

Arkema filed this declaratory-judgment action on June 16, 2010. In the complaint, Arkema challenges the validity of the '451 patent[2] and the '366 patent, both of which contain claims covering the composition of the compound R-1234yf. Honeywell filed an answer on August 20, 2010, asserting counterclaims for infringement of the patents-in-suit.[3] The counterclaims allege that Arkema is liable for direct infringement, contributory infringement, or inducing infringement. The court's scheduling order allowed the parties to amend their pleadings as of right until March 11, 2011. Fact discovery closed on November 18, 2011, and the parties agreed to extend expert discovery until January 20, 2012. The deadline to file summary judgment motions was January 13, 2012, and trial was scheduled for June 11, 2012.[4]

The '120 patent was issued to Honeywell on October 11, 2011. This patent is a "method patent" that covers a "method for cooling air" using R-1234yf. Arkema contacted Honeywell the

---

[2] The '451 patent is being reexamined by the United States Patent and Trademark Office. The parties have informed me that they are working on a covenant not to sue with respect to the claims of the original '451 patent.

[3] The answer also raises the issue whether a justiciable controversy exists concerning the patents-in-suit. (Answer 11-12.) Because Honeywell has not pursued this argument, I need not address it here.

[4] In light of my decision to deny leave to supplement the complaint and with the agreement of both parties at oral argument, the deadlines for discovery and pretrial motions, and the trial date will be extended as set forth in the order accompanying this memorandum.

next week to inquire whether Honeywell would consent to Arkema's motion for leave to supplement the complaint by adding the '120 patent. Honeywell informed Arkema that it would not on November 1, 2011. Arkema filed a motion for leave to supplement on November 9, 2011, Honeywell filed a response in opposition on November 23, 2011, and Arkema filed a reply on December 2, 2011.

The '882 patent was issued on November 29, 2011, and is also a "method patent" covering "a method of transferring heat . . . to provide cooler air in an automobile" using R-1234yf. Arkema inquired whether Honeywell would agree that this court's decision as to the '120 patent would also apply to the '882 patent, but on December 12, 2011, Honeywell informed Arkema that it would not. Arkema withdrew its first motion for leave to supplement on December 15, 2011, and filed a new motion for leave to supplement that addresses the addition of both the '120 patent and the '882 patent. In the accompanying memorandum, Arkema asserts that allowing supplementation would promote judicial economy because of the substantial overlap in issues between the patents-in-suit and the method patents. Honeywell filed its response in opposition on December 29, 2011. On January 6, 2011, Arkema filed its reply. Oral argument was heard on January 19, 2012.

## II.    Discussion

Federal Rule of Civil Procedure 15(d) provides that a court may "[u]pon motion of a party, . . . upon reasonable notice, and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." Fed. R. Civ. P. 15(d). Although motions to supplement should be liberally granted, "[t]he decision of whether to permit a

supplemental pleading is within this Court's discretion." *Hassoun v. Cimmino*, 126 F. Supp. 2d 353, 360 (D.N.J. 2000) (citing *Owens-Illinois, Inc. v. Lake Shore Land Co.*, 610 F.2d 1185, 1188-89 (3d Cir. 1979)). "Leave to file a supplemental complaint should be freely permitted in the absence of undue delay, bad faith, dilatory tactics, undue prejudice to defendants, or futility, and when the supplemental facts are connected to the original pleading." *Hassoun,* 126 F. Supp. 2d at 360. Honeywell argues that leave to supplement the complaint should be denied on the basis of futility.[5]

### A. Justiciability of the Method Patents

Honeywell argues that Arkema's proposed supplemental pleading is futile because it fails to state a justiciable claim and thus should not be allowed. Indeed, where a claim would not survive a motion to dismiss, leave to supplement should be denied as futile. *See Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 243 (3d Cir. 2010); *see also Hassoun*, 126 F. Supp. 2d at 360.

A district court has the power to hear a claim for declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, only "in a case of actual controversy within its jurisdiction." *Id*. § 2201. This requirement of an "actual controversy" "is the same as an Article III case or controversy." *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp*., 482 F.3d 1330, 1338 (Fed. Cir. 2007). The burden is on the party seeking a declaratory judgment "to establish that an

---

[5] Honeywell also opposed supplementation on the ground that adding the method patents at this stage of the litigation would be unduly prejudicial. At oral argument, the parties agreed that granting the motion would only delay discovery by an additional four months. As a result, I conclude that were I to grant the motion, there would be no undue prejudice to Honeywell. Nevertheless, I will deny the motion on the grounds of futility.

Article III case or controversy existed" at the time the claim was filed. *Arris Group, Inc. v. British Telecommc'n PLC*, 639 F.3d 1368, 1373 (Fed. Cir. 2011).

In *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007), the United States Supreme Court announced the standard for determining whether a claim for declaratory relief states a justiciable case and controversy. "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id*. at 127.

Through a series of cases, the Federal Circuit has expounded upon the components of the *MedImmune* standard. To begin, in patent cases, an "economic injury alone is not sufficient to confer standing." *Arris Group*, 639 F.3d at 1374. Rather, parties to a declaratory-judgment action must have "adverse *legal* interests," which "requires a dispute as to a legal right—for example, an underlying legal cause of action that the declaratory defendant could have brought or threatened to bring." *Id*. (emphasis in original). Additionally, the immediacy requirement "highlight[s] the importance of the period of time between the date on which the complaint was filed and the date on which potentially infringing activities will begin." *Sierra Applied Sci., Inc. v. Advanced Energy Indus., Inc.*, 363 F.3d 1361, 1378-79 (Fed. Cir. 2004). "The greater the length of this interim period, the more likely the case lacks the requisite immediacy." *Id*. Finally, the requirement of reality is tied "to whether the design of the potentially infringing subject of the declaratory-judgment suit was substantially *fixed*, particularly with respect to its potentially-infringing characteristics, on the date the complaint was filed." *Id*. at 1379 (emphasis in original). "[T]he greater the variability of the subject of a declaratory-judgment suit . . . the greater the

chance that the court's judgment will be purely advisory, detached from the eventual, actual content of that subject—in short, detached from eventual reality." *Id*.

Arkema argues that where parties are currently involved in a justiciable patent dispute, the analysis for determining whether the complaint can be supplemented with later-issued patents depends upon the similarity of the claims and technology between the patents.[6] In support of this argument, Arkema cites a passage from *Teva Pharmaceuticals* in which the Federal Circuit stated, "[W]e have already established . . . that related litigation involving the same technology and the same parties is relevant in determining whether a justiciable declaratory judgment controversy exists on other related patents." 482 F.3d at 1344. However, the overlap of issues, parties, and technology between an existing patent lawsuit and a proposed declaratory action is only one "relevant" consideration among "all [of] the circumstances" under the *MedImmune* analysis—it does not supplant the *MedImmune* standard as Arkema suggests. In fact, in *Teva Pharmaceuticals* the Federal Circuit applied the *MedImmune* standard and considered the existence of related litigation to be merely one of five circumstances contributing to justiciability in that case. *Id*. Thus, while the overlap between the patents-in-suit and the method patents is one factor I will consider, it alone does not establish justiciability.

For the reasons set forth below, I conclude that Arkema's proposed supplementary claims lack adverse legal interests, immediacy, and reality, and, thus, are not justiciable.

---

[6] To this end, Arkema asserts that the broadest claims of the method patents overlap with the claims of the patents-in-suit, that they name many of the same inventors, and that the method patents claim priority to the same patent applications as the patents-in-suit.

### i. Adverse Legal Interests

In order for a declaratory claim to be justiciable, the parties must have adverse legal interests. In other words, the declaratory plaintiff in a patent case must show that he or she is presently or imminently will be engaging in an activity that could subject him or her to an infringement suit by the declaratory defendant. *Teva Pharm.*, 482 F.3d at 1341. Honeywell contends that the methods patents do not present a justiciable controversy because Arkema cannot show past acts or planned activity that could subject Arkema to suit for either direct infringement or indirect infringement. I agree.

### a. Direct Infringement

There is no possibility that Arkema will face a charge of direct infringement with respect to the '120 patent and/or the '882 patent. Both the '120 patent and the '882 patent are "method patents" describing a method for "cooling air" and "transferring heat," respectively. "[Direct] [i]nfringement of a method claim occurs when a party performs all of the steps of the process." *Ricoh Co., Ltd. v. Quanta Computer, Inc.*, 550 F.3d 1325, 1333 (Fed. Cir. 2008). Arkema plans only to supply R-1234yf to manufacturers. Arkema does not allege that it plans to use the compound. Because Arkema does not plan to "perform[] all of the steps" recited by the '120 patent or the '882 patent, there is no potential that Arkema may directly infringe either patent.

### b. Indirect Infringement

"[W]here a patent holder accuses customers of direct infringement based on the sale or use of a supplier's [goods], the supplier has standing to commence a declaratory judgment action if (a) the supplier is obligated to indemnify its customers from infringement liability or (b) there

is a controversy between the patentee and the supplier as to the supplier's liability for induced or contributory infringement."[7] *Arris Group*, 639 F.3d at 1375. In light of the record thus far, none of these three theories of indirect infringement—indemnity, contributory infringement, or induced infringement—provides a basis for declaratory-judgment jurisdiction with respect to the method patents.

### 1.  Indemnity

Arkema does not seriously contend that it faces liability for indirect infringement based on a theory of indemnity. Although Arkema does note that it received a request from one of its customers on June 10, 2010, to sign an indemnification agreement pertaining to R-1234yf patent infringement, this argument is raised for the first time in a single sentence in Arkema's reply brief. Furthermore, it does not appear that Arkema did in fact sign the agreement, and Arkema does not allege that it is obligated to indemnify its customers. *Microchip Tech., Inc. v. Chamberlain Group, Inc.*, 441 F.3d 936, 944 (Fed. Cir. 2006) (concluding that patentee's threats against supplier's customers did not create an Article III case and controversy when the supplier "ha[d] not produced any agreement indemnifying a customer against infringement").

### 2.  Contributory Infringement and Induced Infringement

Arkema is not currently or imminently in danger of facing liability for contributory infringement or induced infringement. "To hold a component supplier liable for contributory infringement, a patent holder must show, inter alia, that (a) the supplier's product was used to commit acts of direct infringement; (b) the product's use constituted 'a material part of the

---

[7] It is worth noting that there are no allegations that Honeywell has threatened suit against Arkema's customers for direct infringement.

invention'; (c) the supplier knew its product was 'especially made or especially adapted for use in an infringement' of the patent; and (d) the product is 'not a staple article or commodity of commerce suitable for substantial noninfringing use.'" *Arris Group*, 639 F.3d at 1376 (internal citations omitted). "[I]nducement of infringement . . . typically includes acts that intentionally cause, urge, encourage, or aid another to directly infringe a patent." *Id*. at 1379 n.13. "'Inducement requires that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement.'" *Id*. (quoting *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006)). "[I]nducement [also] requires a threshold finding of direct infringement." *Ricoh*, 550 F.3d at 1341. Notably, both theories of indirect infringement require an act of direct infringement by a third party.

Arkema has neither alleged nor offered evidence that an Arkema customer has committed an act of direct infringement. Instead, Arkema contends that because Honeywell included a charge for indirect infringement of the '366 patent in its answer on the basis of Arkema's provision of a R-1234yf sample to a customer for use in test runs, Honeywell will charge Arkema with indirect infringement of the method patents for the same activity.[8] This argument fails because even if I could determine that an act of direct infringement of the method patents had occurred during the test runs, these tests took place before the method patents were issued and so

---

[8] Arkema also argues that "there is no question that Honeywell could and would bring suit against Arkema on the method claims of the '120 and '882 patents" because it is the position of Honeywell's expert with respect to the '366 patent that R-1234yf "is not a common component suitable for non-infringing uses." (Pls.' Reply Brief in Supp. of Mot. for Leave to Supplement the Compl. 4.) Because the '120 and '882 patents contain claims covering the method for using the compound R-1234yf, rather than claims covering the composition of the compound like the '366 patent, it does not necessarily follow that Honeywell will maintain that R-1234yf is also not suitable for use in non-infringing methods. Indeed, Honeywell and Arkema agreed at oral argument that non-infringing methods for the use of R-1234yf do exist.

cannot form the basis for a claim of indirect infringement. *Nat'l Presto Indus., Inc. v. W. Bend Co.*, 76 F.3d 1185 (Fed. Cir. 1996).

While specific infringing acts are not necessary for declaratory-judgment jurisdiction where there is specific planned activity, *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1361 (Fed. Cir. 2009), Arkema has not shown that its specific planned activity (supplying R-1234yf) may subject it to liability for indirect infringement. Arkema has not adduced any evidence as to which potential customer will imminently commit an act of direct infringement, when this may happen, or how. In fact, the evidence suggests, and Arkema conceded at oral argument, that there are methods for using R-1234yf in an automobile air-conditioning system that will not infringe the method patents. (Response Ex. 3, 4.) I cannot just assume that an Arkema customer will imminently practice an infringing method, much less that Honeywell will seek to hold Arkema responsible for indirect infringement. While it is true that Arkema need not admit liability for indirect infringement in order to establish declaratory-judgment jurisdiction, *Int'l Med. Prosthetics Research Assocs., Inc. v. Gore Enterprise Holdings, Inc.*, 787 F.2d 572 (Fed. Cir. 1986), Arkema must still carry its burden to establish an Article III case or controversy, *Arris Group*, 639 F.3d at 1373.

In sum, Arkema has not shown that it is presently or will imminently be engaged in any activity that could subject it to an infringement suit on the method patents by Honeywell. Because Honeywell could not have realistically brought or even threatened to bring suit yet, the parties have no adverse legal interests with respect to the method patents, and Arkema's proposed supplementation is futile.

ii.     **Immediacy**

Even if I were to assume that Arkema could be held liable for contributing to or inducing infringement by Arkema's customers, those threshold acts of direct infringement are not sufficiently immediate to create a justiciable controversy between Honeywell and Arkema. The record before me suggests that the first predicted commercial launch of any product using R-1234yf is at least one year away. (Response Ex. 4, 1.) The Federal Circuit has found such a delay between the date on which the claims were filed and the date on which potentially infringing activities will begin fatal to the immediacy requirement for declaratory-judgment jurisdiction. *See, e.g.*, *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340 (Fed. Cir. 2007) (concluding that a potentially infringing act a few years off did not satisfy the immediacy requirement); *Sierra Applied Sci.*, 363 F.3d at 1376 (finding insufficient immediacy where the record showed the potentially infringing product was not built until a year after the complaint was filed); *Lang v. Pac. Marine & Supply Co.*, 895 F.2d 761 (Fed. Cir. 1990) (stating that nine months between filing and infringement was too long).

iii.    **Reality**

Finally, Arkema has not demonstrated that the design of its customers' products, which are still a year away from being commercially available, is sufficiently fixed or specific to satisfy the "reality" requirement under the *MedImmune* standard. Arkema's proposed supplementary claims ask me to declare that Arkema's planned activities do not indirectly infringe Honeywell's method patents. One consideration in such an analysis would be whether Arkema's customers have committed or will commit a threshold act of direct infringement, which would require a comparison of the steps used in Arkema's customers' products with the claims contained in the

method patents. But Arkema offers no evidence suggesting that those products have been finalized. This omission is especially significant given that non-infringing methods for the use of R-1234yf in automobile air conditioners exist. As the product designs of Arkema's customers' products could change during litigation, adjudicating the validity of the method patents would be tantamount to giving Arkema's customers a wholly advisory opinion directing them to use these parameters, but not those. *See, e.g.*, *Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1216 (7th Cir. 1980) (concluding that because the design of the potentially infringing product might not ultimately be produced or marketed there was no declaratory-judgment jurisdiction). This I cannot do.

### III.   Conclusion

For the reasons explained above, I will deny Arkema's motion for leave to supplement the complaint. An appropriate order follows.