# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ARKEMA INC. *et al.* | : |
| | : |
| Plaintiffs, | : |
| | : CIVIL ACTION |
| v. | : |
| | : NO. 10-cv-2886 |
| HONEYWELL INTERNATIONAL, INC. | : |
| | : |
| Defendant. | : |
| | : |

## MEMORANDUM

YOHN, J.                                                                                                September 25, 2013

Plaintiffs, Arkema Inc. and Arkema France (collectively "Arkema"), bring this action against defendant, Honeywell International, Inc. ("Honeywell"), pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, seeking a declaration from the court that would invalidate four patents relating to a refrigerant with low global-warming potential called HFO-1234yf, or simply 1234yf. Arkema also seeks a declaration that its manufacture, use, sale, offer for sale, or importation of 1234yf does not infringe upon those patents. Before me is Honeywell's motion to stay litigation pending the *inter partes* reexamination of the patents by the U.S. Patent and Trademark Office ("PTO"). For the following reasons, the motion to stay litigation will be granted.

**I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Honeywell is the owner of four patents relating to the refrigerant 1234yf: U.S. Patent No. 7,279,451 ("'451"); U.S. Patent No. 7,534,366 ("'366"); U.S. Patent No. 8,033,120 ("'120"); and

U.S. Patent No. 8,065,882 ("'882"). (Am. Compl. ¶ 7.) The refrigerant is important because, pursuant to European Union Directive 2006/40, all new motor-vehicle platforms and all new cars within the European Union, by 2011 and 2017 respectively, are required to use a refrigerant with a low global-warming potential in their air-conditioning systems. (*Id*. ¶ 3.) The current refrigerant, HFC-134a, does not meet the directive; however, 1234yf does. (*Id*. ¶¶ 3–4.)

In an effort to enter the U.S. market for 1234yf free from the threat of litigation, on June 16, 2010, Arkema filed a declaratory judgment action in the Eastern District of Pennsylvania, asking the court to declare invalid patents '451 and '366—then the only two patents that had been issued. (Compl. ¶¶ 50-55.) Arkema also asked that the court declare any manufacture, use, sale, offer of sale, or importation of 1234yf a noninfringing act with respect to those patents. (*Id*. ¶¶ 56–60.) In addition to its answer, Honeywell filed counterclaims alleging that Arkema had infringed on both the '451 and '366 patents. (Countercl. ¶¶ 23–32.)

Prior to the first status conference in this case, Mexichem S.A.B. de C.V. ("Mexichem"), a third party, initiated an *inter partes* reexamination proceeding against the '451 patent with the PTO.[1] (Pls.' Brief in Opp'n to Def.'s Mot. to Stay [hereinafter "Pls.' Opp'n Br."] 2.) Despite the pending *inter partes* reexamination, Arkema and Honeywell continued to litigate both the '451 and '366 patents and proceeded with discovery. (*Id*.) Toward the end of discovery on the '451 and '366 patents, however, the PTO issued the '120 and '882 patents. (*Id*.; Def.'s Mot. to Stay 2.) Subsequently, Arkema moved to amend its complaint to add the newly issued patents. (Pls.'

---

[1] In an *inter partes* reexamination, as opposed to an *ex parte* reexamination, the party requesting the reexamination is afforded much greater involvement in the reexamination process, "including the opportunity to comment upon and rebut arguments made by the patent owner throughout the reexamination." Alan L. Durham, *Patent Law Essentials: A Concise Guide* 43 (3d ed. 2009).

Opp'n Br. 3; Def.'s Mot. to Stay 2.) I denied that motion so that the litigation could move forward without delay, but, recognizing that it was a debatable issue and, at Arkema's request, I certified the order denying Arkema's motion to amend its complaint as a final judgment under Rule 54(b) of the Federal Rules of Civil Procedure, thus making the decision appealable. (Order, Mar. 8, 2012, ECF No. 80.) Thereafter, Arkema exercised its right to appeal, and the Federal Circuit concluded that a case or controversy existed such that amendment of the complaint was proper. *See Arkema Inc. v. Honeywell Int'l, Inc.*, 706 F.3d 1351 (Fed. Cir. 2013). Meanwhile, while the appeal was pending in the Federal Circuit, Mexichem filed additional *inter partes* reexaminations, thus placing the '366, '120, and '882 patents under review by the PTO. (Pls.' Opp'n Br. 3.)

Just prior to Arkema's appeal to the Federal Circuit, the PTO rejected Honeywell's claims in the '451 patent reexamination. (Pls.' Opp'n Br. 2.) Although Honeywell subsequently amended the claims in that patent for further reexamination, Honeywell extended to Arkema a covenant not to sue on the '451 patent, to which the parties agreed. (*Id*.) Consequently, and by stipulation of the parties, I issued an order dismissing all claims, counterclaims, and defenses with respect to the '451 patent. (Order, Feb. 9. 2012, ECF No. 76.)

This case was remanded from the Federal Circuit in March 2013. In accordance with its successful appeal, Arkema amended its complaint to include the '120 and '882 patents. Subsequently, Honeywell filed an amended answer. On May 23, 2013, Honeywell filed this motion to stay litigation with respect to all patents pending reexamination by the PTO, to which

Arkema objects.² On August 29, 2013, I held oral argument with respect to Honeywell's motion for a stay of litigation and agreed to withhold a decision for two weeks while the parties discussed alternatives. By letter of September 19, 2013, the parties informed the court that Honeywell had decided that it would not grant a covenant not to sue on any of the three patents at issue and the parties were unable to reach an agreement on any other basis. Honeywell states that Arkema made it clear that it was unwilling to accept a covenant on the original claims alone and Arkema, as of September 19, 2013, had not changed that position. These arguments balance each other and do not favor or disfavor a stay.

**II.    LEGAL STANDARD**

Pursuant to 35 U.S.C. § 318,³

> Once an order for inter partes reexamination of a patent has been issued under section 313, the patent owner may obtain a stay of any pending litigation which involves an issue of patentability of any claims of the patent which are the subject of the inter partes reexamination order, unless the court before which such litigation is pending determines that a stay would not serve the interests of justice.

---

²It is somewhat ironic that in 2012 Honeywell wanted to proceed with the litigation as quickly as possible and Arkema wanted to delay it by amending its complaint to add two new claims, thus requiring additional discovery, motions, etc. Now it is Arkema that wants to proceed with the trial and Honeywell that wants to await the results of the reexaminations by the PTO with reference to the patents at issue. However, the status of the patents at issue has changed substantially since 2012.

³Chapter 31 of Title 35 of the United States Code was recently amended by the Leahy-Smith America Invents Act, Pub. L. No. 112-29, 125 Stat. 284 (2011). The parties agree, however, that the previous versions of 35 U.S.C. §§ 311–18 are applicable to this litigation, as it was initiated prior to the amendments going onto effect. (Def.'s Mot. to Stay 5 n.3; Pls.' Opp'n Br. 7; *see also* The U.S. Patent and Trademark Office, *Frequently Asked Questions: Inter Partes Reexamination*, uspto.gov,
http://www.uspto.gov/aia_implementation/faqs_inter_partes_reexam.jsp (last modified Aug. 7, 2012).)

35 U.S.C. § 318 (2011).  "Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (citation omitted).  Thus, the grant or denial of a stay is a matter of discretion for the court.  "In the exercise of this discretion, district courts balance the following three factors . . . : '(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set.'" *Tyco Fire Prods. LP v. Victaulic Co.*, No. 10-4645, 2011 WL 4632689, at * 2 (E.D. Pa. Oct. 4, 2011) (quoting *Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999)).  In addition to considering these factors, "the [c]ourt must weigh the competing interests of the parties and attempt to maintain an even balance." *Dentsply Intern., Inc. v. Kerr Mfg. Co.*, 734 F. Supp. 656, 658 (D. Del. 1990).  While some courts have adopted a "liberal policy in favor of granting motions to stay proceedings pending the outcome of []PTO reexamination or reissuance proceedings," *ASCII Corp. v. STD Entm't USA*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994), "[a] court is under no obligation to delay its own proceedings by yielding to ongoing PTO patent reexaminations, regardless of their relevancy to infringement claims which the court must analyze." *NTP, Inc. v. Research in Motion, Ltd.*, 397 F. Supp. 2d 785, 787 (E.D. Va. 2005) (citing *Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001)).

**III.   DISCUSSION**

Honeywell, the patent holder, seeks a stay of litigation pending reexamination of the patents at issue by the PTO.  I will address the three factors used in determining whether a stay is

appropriate in turn.

### A. Undue Prejudice or Clear Tactical Disadvantage to Arkema

The first factor considers whether a stay would subject the nonmoving party to undue prejudice or a tactical disadvantage. "Court[s] [have] analyzed whether a plaintiff would suffer undue prejudice (and whether a defendant would gain an unfair tactical advantage) if a stay is granted by examining four factors: (1) the timing of the request for reexamination; (2) the timing of the request for stay; (3) the status of reexamination proceedings; and (4) the relationship of the parties." *Ever Win*, 902 F. Supp. 2d at 508.

#### 1. Timing of request of reexamination and request for stay

This case presents a rather novel factual scenario in that neither party to this litigation requested the *inter partes* reexamination of the patents. Instead, after this action was initiated by Arkema in June 2010, Mexichem initiated reexamination proceedings on the '451 patent with the PTO in October 2010. (Compl., June 16, 2010, ECF No. 1; Def.'s Mot. to Stay Ex. 7, at 1.) Honeywell did not move to stay the litigation proceedings at that time. In November 2011, Mexichem placed the '120 patent into reexamination. (Def.'s Mot. to Stay Ex. 8, at 1.) Then, in August and September 2012, while this case was delayed pending Arkema's appeal to the Federal Circuit, Mexichem placed the '882 and '366 patents into reexamination, respectively. (Def.'s Mot. to Stay Ex. 6, at 1; *id*. Ex. 9, at 1.) When the case was remanded from the Federal Circuit in February 2013, Honeywell moved to stay the litigation in May 2013, approximately three months following remand and one month following the first status conference since the case was remanded.

6

Because neither party to this litigation requested the reexamination, the timing of the request for reexamination is immaterial.  Of importance, however, is the timing of the motion to stay with respect to when the patents entered reexamination.  "[A] motion to stay pending reexamination can always be said to seek a tactical advantage because it 'would not have been filed but for [defendant's] belief that the granting of a stay would [be to its] benefit.'" *SenoRx, Inc. v. Hologic, Inc.*, No. 12-173, 2013 WL 144255, at *3 (D. Del. Jan. 11, 2013) (quoting *Round Rock Research LLC v. Dole Food Co. Inc.*, Nos. 11-1239, 41, 42, 2012 WL 1185022, at *2 (D. Del. Apr. 6, 2012)).  "However, the less time that a party waits to file a motion to stay pending reexamination, the less the movant's conduct gives rise to an inference that the delay in so doing was impermissibly tactical." *Ever Win*, 902 F. Supp. 2d at 508.  Here, what matters is whether the timing of the stay with respect to the knowledge of the reexaminations "may lead to an inference that the moving party is seeking an inappropriate tactical advantage." *Belden Techs. Inc. v. Superior Essex Commc'ns LP*, No. 08-63, 2010 WL 3522327, at *2 (D. Del. Sep. 2, 2010).

The '451 patent entered reexamination in October 2010.  When the '451 patent emerged from reexamination with Honeywell's claims rejected, Honeywell extended to Arkema a covenant not to sue, to which both parties agreed and the '451 patent claims were dismissed from the case.  Therefore, because the '451 patent is no longer at issue, it is not a proper starting point in analyzing the request for reexamination versus that of the stay of litigation.[4]

---

[4] At the hearing on August 29, 2013, with respect to this matter, both parties agreed that the '451 patent had been dismissed from the case.

Instead, pertinent to the current matter is the request for reexamination of the remaining patents compared to Honeywell's petition for a stay. The '366 and '882 patents entered reexamination while the parties were awaiting a resolution of Arkema's appeal to the Federal Circuit, and the '120 patent entered reexamination even earlier while the parties were briefing and awaiting disposition of Arkema's motion to amend its complaint in this court. Honeywell moved for the stay of litigation three months following remand of the case to this court, and just over one month after the status conference following remand. While a stay may provide Honeywell with some tactical advantage, there is no evidence before me that would lead to an inference that Honeywell's motion to stay is seeking an *inappropriate* tactical advantage or results in undue prejudice. To the contrary, Honeywell moved for a stay in relatively short order following remand and then a status conference with the court as to how this case should proceed.[5]

Indeed, Arkema previously stated that it was prejudicial because it could not risk investing over $70 million to build a large scale manufacturing plant until the validity of Honeywell's claims were finally determined. Honeywell countered that because it was not pursuing the rejected claims in the three original patents, as we will see, Arkema had all that it needed to have if it truly wanted to build its plant. In fact, Arkema has now apparently had a change of heart since it has announced that it is proceeding with the construction of a 1234yf plant in China and intends to construct another plant in Europe.

---

[5]Additionally, Honeywell informed Arkema and the court by letter, dated May 9, 2013, that it intended to move for a stay of the litigation proceedings, two weeks following the April 25 status conference.

Thus, as I find no dilatory motive, undue prejudice or inappropriate litigation tactics attempting to gain a clear tactical advantage on the part of Honeywell, these factors weigh slightly in favor of a stay.

### 2. Status of reexamination proceedings

With regard to the status of the reexamination proceedings, "the '120 . . . [patent has] already issued Actions Closing Prosecution, which tee[s] up [that reexamination] for appeal[] to the Board of Patent Appeals and Interferences." (Def.'s Mot. to Stay 12.)  The '366 and '882 patents have each completed the first office action, although Honeywell has submitted a request to amend, cancel, and add claims in both patents—a request that is currently pending before the PTO.  (*Id*. at 11–12.)  According to statistics provided by the PTO, the average pendency of a reexamination, from filing date to certificate issue date, is 39.5 months, and the median is 34.1 months.  U.S. Patent and Trademark Office, *Reexamination Information*, uspto.gov, http://www.uspto.gov/patents/stats/Reexamination_Information.jsp (follow "inter partes reexamination historical statistics" hyperlink).  Using those statistics, the parties could have to wait more than two years before both the '882 and '366 patents, which were filed in August and September 2012, respectively, emerge from reexamination.  That estimate does not include the additional time the parties could have to wait for a decision by the Board of Patent Appeals and Interferences, should a party appeal the decision of the examiner, let alone a possible final review by the Federal Circuit.  *See Belden*, 2010 WL 3522327, at *3 ("[T]he current average pendency between receiving a [Right of Appeal Notice] and, subsequently, a decision from the [Board of Patent Appeals and Interferences] was roughly equivalent to that of the underlying reexamination by the [Central Reexamination Unit].").  Thus, the parties could be waiting a significantly greater

time, especially if a trial could be completed within twelve months, as is Arkema's estimate.

With respect to this case, however, it does appear that the PTO has reached decisions and issued certificates with greater speed than the average waiting period suggests. In the case of the '120 patent, which entered reexamination in November 2011, (Def.'s Mot. to Stay, Ex. 8, at 1), a certificate was issued in less than two years. Should the PTO maintain that pace with regard to the '366 and '882 patents, certificates could issue in roughly the same amount of time that it would take to complete discovery and hold a trial. That proposition, however, is based on the assumption that the PTO will reexamine the patents faster than its average suggests. Using the statistics provided by the PTO itself, it is much more likely that the parties will wait longer than a year for certificates to issue for the two remaining patents. Thus, the stage of the reexaminations supports a denial of a stay. This is especially true when, as will be explained, all of the patents previously issued have now been held invalid by the PTO, Honeywell has affirmed at oral argument that it will not pursue any of those patents in their original form and Honeywell is now seeking to amend all of the original claims and to add substantial new claims to the patents as the patents proceed through the reexamination procedure. Thus, this factor weighs heavily in favor of a stay.

        **3.**     **Relationship of the parties**

The final factor to consider with respect to undue prejudice is the relationship of the parties. "Some courts are reluctant to stay proceedings where the parties are direct competitors." *Belden*, 2010 WL 3522327, at *3; *see also Neste Oil Oyj v. Dynamic Fuels, LLC,* No. 12-662, 2013 WL 424754, at *2–3 (D. Del. Jan. 31, 2013) (explaining reasoning behind reluctance to grant stay when parties are direct competitors). In such cases, however, it is most often the

infringing party seeking a stay of litigation, in order to allow it to continue to infringe on the patent and dilute the patent holder's market share of profits.  *See, e.g., SenoRx,* 2013 WL 144255, at *8-9; *Boston Scientific Corp. v. Cordis Corp.*, 777 F. Supp. 2d 78, 789-90 (D. Del. 2011); *Nidec Corp. v. LG Innotek Co., Ltd.,* No. 07-108, 2009 WL 3673433, at *4 (E.D. Tex. Apr. 3, 2009); *Cooper Techs. Co. v. Thomas & Betts Corp.*, No. 6-242, 2008 WL 906315, at *1 (E.D. Tex. Mar. 31, 2008).  Here, that is not the case, as it is Honeywell, the patent holder, seeking the stay, and Arkema has not yet entered the U.S. market for 1234yf.

> Arkema argues in its brief in opposition to Honeywell's motion for a stay—as well as at oral argument on August 29, 2013—that it would be unduly prejudiced by a stay of litigation because it would be kept from competing in a billion dollar market, or in the alternative, forced to roll the dice on the construction of $70 million worth of infrastructure, which could be rendered useless if Honeywell's patents are found to be valid.  (Pls.' Opp'n Br. 8–10.)  Those are certainly valid concerns, although, as noted, Arkema is now proceeding with the construction of the infrastructure.  As one court has already noted, however, such an argument "is far better suited . . . to address a court's possible refusal to exercise its discretion and assume jurisdiction [under the Declaratory Judgment Act]."  *Sabert Corp. v. Waddington N. Am., Inc.*, No. 06-5423, 2007 WL 2705157, at *6 (D.N.J. Sep. 14, 2007).  Here, it is the uncertainty in the validity of Honeywell's patents that is leading to Arkema's possible prospective harm; nevertheless, I cannot say that such uncertainty is unduly prejudicing Arkema by keeping it out of the market in which Honeywell currently holds a valid patent while the parties await a reexamination decision from the PTO.

"Uncertainty abounds in every action of declaratory judgment in a patent case." *Id*. While Arkema would like to readily extinguish any question with regard to the validity of the Honeywell patents, "[t]he stay, while adding time to the litigation, is a minimal expenditure of judicial economy for what might be an optimal efficiency gain." *Id*. Therefore, after balancing the four factors in consideration of undue prejudice, the factors tip substantially in favor of a stay of the litigation.

  **B.** **Simplification of the Issues**

The second factor a court considers is whether the reexamination proceedings before the PTO will simplify the issues at trial. There are three possible results when a patent claim is reviewed by the PTO: "it can be canceled as unpatentable, it can be confirmed as originally written, or it can be modified." *SenoRx*, 2013 WL 144255, at *3. "Whatever outcome occurs, there is the potential for the simplification of issues for trial, either by reducing the number of claims at issue, confirming the validity of the surviving claims, or narrowing the scope of a modified claim." *Id*. Courts have specifically recognized numerous ways in which staying litigation pending reexamination before the PTO may simplify proceedings:

> (1) all prior art presented to the court at trial will have been first considered by the PTO with its particular expertise, (2) many discovery problems relating to the prior art can be alleviated, (3) if patent is declared invalid, the suit will likely be dismissed, (4) the outcome of the [administrative review] may encourage a settlement without further involvement of the court, (5) the record of the [administrative review] would probably be entered at trial, reducing the complexity and the length of the litigation, (6) issues, defenses, and evidence will be more easily limited in pre-trial conferences and (7) the cost will likely be reduced both for the parties and the court.

*Mkt.-Alerts Pty. Ltd. v. Bloomberg Fin. L.P.*, No. 12-780, 2013 WL 443973, at *2 (D. Del. Feb. 5, 2013) (quoting *Gioello Enters. Ltd. v. Mattel, Inc.*, No. 99-375, 2001 WL 125340, at *1 (D. Del. Jan. 29, 2001)).

The PTO has issued an Action Closing Prosecution with respect to the '120 patent. (Def.'s Mot. to Stay 12.) Honeywell's claims in that patent were all ruled invalid and Honeywell now is seeking further review by the Board of Patent Appeals and Interferences. The examiners have not issued, however, an Action Closing Prosecution with respect to the '366 and '882 patents. The claims in the '882 patent were rejected in the PTO's First Office Action, issued October 23, 2012. Honeywell has since filed a request to cancel, add, or amend the claims (Def.'s Mot. to Stay, Ex. 10 i–iv), some of which are independent claims that may affect corresponding dependent claims, should the amendments be accepted. Likewise, the claims of the '366 patent were rejected in the PTO's First Office Action, and Honeywell has since filed a request to cancel, add or amend the claims. Accordingly, it would be inefficient to litigate claims that could possibly emerge from the reexamination process as either canceled or amended, which could either end this litigation or, in the alternative, necessitate another trial on the amended claims. Proceeding on the rejected patent claims in the three patents, which Honeywell agreed at oral argument it is no longer pursuing, would be futile and a waste of time and money. For that reason, this factor weighs very heavily in favor of granting the stay.

I acknowledge Arkema's argument that the reexamination proceedings will not address its infringement issues, but only the issue of validity of the patents. I disagree with its statement, however, that "the reexamination will do little, if anything, to simplify the issues this Court will need to address." (Pls.' Opp'n Br. 11.) Should the claims emerge from the reexamination process rejected, as has been the case with respect to *all* of the claims in *all* of the patents reviewed in this matter thus far, such a finding may encourage a covenant not to sue, or even end the matter entirely. That would greatly simplify and clarify the issues this court needs to address.

Regardless, while infringement issues may remain post reexamination, a determination on the amended '366 and '882 claims by the PTO will indeed simplify the issues in this matter. If the case is not stayed, the parties will be preparing contentions, expert reports and claim construction briefs for claims that will no longer exist at the conclusion of the reexaminations. The patents would then have to be relitigated upon issuance of any new or amended claims, or the litigation would terminate because all claims were ruled invalid. A stay will clearly result in a simplification of issues, at the least by avoiding the cost of preparation for and a trial of claims that are no longer being pursued.

### C.     Stage of the Proceedings

The final factor a court considers is the stage of the litigation, i.e., whether discovery is complete and whether a trial date has been set. "Motions to stay pending reexamination are typically granted in the early stages of patent litigation." *Ever Win Int'l Corp. v. Radioshack Corp.*, 902 F. Supp. 2d 503, 507 (D. Del. 2012). That is because "[s]taying a case in the early stages 'can be said to advance judicial efficiency and maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims.'" *Neste Oil Oyj v. Dynamic Fuels, LLC*, No. 12-662, 2013 WL 424754, at *5 (D. Del. Jan. 31, 2013) (quoting *SenoRx*, 2013 WL 144255, at *5). "On the other hand, when the court is faced with a stay decision in the later phases of a case, 'the Court and the parties have already expended significant resources on the litigation, and the principle of maximizing the use of judicial and litigant resources is best served by seeing the case through to its conclusion.'" *Id*.

In this case, substantial discovery has taken place with respect to the '366 patent. According to Arkema, "the parties produced over two million documents, answered hundreds of

interrogatories and requests for admissions, took fourteen fact depositions, provided eleven expert reports, and took five expert depositions . . . ." (Pls.' Opp'n Br. 2.)  There has been no discovery, however, with respect to the '120 and '882 patents.  Additionally, the parties have yet to commence claim construction, and a date has not been set for a *Markman* hearing, submission of dispositive motions, or a trial.  Although a considerable amount of discovery has been completed with reference to one patent, because discovery concerning the '120 and '882 patents is just beginning, coupled with the fact that a scheduling order has yet to issue, this factor weighs in favor of a stay of the proceedings.  Moreover, because all of the claims in all of Honeywell's patents reviewed by the PTO thus far have been rejected, none are still being pursued in their original forms by Honeywell and Honeywell has either sought to amend the claims or add new claims, the uncertainty of what claims may emerge from the PTO, if any, means even more discovery, motions and hearings will then be required, thus reinforcing the conclusion that the litigation is in a very early stage and a stay is favored.

## IV.   CONCLUSION

The facts of this case favor a stay of litigation.  Proceeding on the rejected patent claims, which Honeywell is no longer pursuing, would be futile and a waste of time and money.  I cannot find that a stay would not serve the ends of justice.  Honeywell stated at oral argument that although it legally could still litigate its original patents since they are still valid, it was not pursuing them as it would be a waste of time since they have now been ruled invalid and Honeywell seeks to amend them and add new claims.  It is thus futile to litigate these original claims.  The new or amended claims, if they are approved by the PTO, will have to be litigated at a later date and it is wasteful and inefficient to spend resources on litigation now that would not

resolve those still unapproved claims.  At this moment, all claims of the asserted patents before this court stand rejected as unpatentable by the PTO and Honeywell is no longer pursuing these original claims, but is instead pursuing amended and new claims.  Accordingly, I will stay these proceedings until the PTO issues a certificate canceling, amending, or confirming the claims in the '366, '120 and '882 patents.  Arkema is free to petition the court to lift the stay once one or more of the certificates has issued.  An appropriate order follows.